## Lower Paxton Township v.
## United States Fidelity & Guaranty Co.

*Richard H. Wix,* for plaintiff.
*Lee Shipman,* for defendant.

MORGAN, *J.,* April 1, 1985—Plaintiff, Lower Paxton Township, has moved for summary judgment in this declaratory judgment action which seeks a determination of coverage under a comprehensive general liability insurance policy issued by defendant, United States Fidelity and Guaranty Company.

The parties have stipulated the facts:

A township codes enforcement officer negligently issued permits for construction of a town house complex under plans which did not meet building code requirements regarding the manner of installing windows. He allowed the construction to proceed according to the plans, never bringing the violations to anyone's attention during inspections and ultimately issuing certificates of occupancy. The township later discovered the violations and required the builder to bring the complex into compliance with the code by replacing many of the windows. The builder did so and then claimed for the cost of replacing the windows and other damages in a suit to which the township became a party on allegations of the negligence of its employees. U.S.F.&G., the township's comprehensive liability carrier, denied coverage to the township on the grounds that the claim did not come within the

scope of its policy. The case with the builder was settled and this suit was filed by the township for an interpretation of the policy and to recover from U.S.F.&G. the township's contribution to the settlement, counsel fees and costs, amounting to $22,787.15.

The policy in question provides coverage to the township for "bodily injury or property damage . . . caused by an occurrence . . . arising out of . . . all operations necessary or incidental to the business of the named insured" and defines the word "occurrence" as "an accident . . . which results in . . . damage neither expected or intended from the standpoint of the insured."

In its brief, U.S.F.&G. first argues that the negligence of the Codes Enforcement Officer was not an "accident" as that word is customarily used in civil litigation. Well, of course, we are not concerned here with usage of the term in some other sense but rather with its use in an insurance contract and the definition fully accords with the established Pennsylvania law that the word "accident" as used in insurance policies "simply stated, is an unanticipated event." Brenneman v. St. Paul F. & M. Ins. Co., 411 Pa. 409, 413, 192 A.2d 745 (1963).

U.S.F.&G. next seems to argue that the word "accident" does not comprehend the act of negligence itself but may be properly understood only as referring to the physical event inflicting injury. This argument has been considered and rejected in Pennsylvania which recognized that "accident" as used in an insurance policy includes negligence. Lancaster Area Refuse Authority v. Transamerica Insurance Co., 437 Pa. 493, 263 A.2d 368 (1970); Dilks v. Flohr Chevrolet, 411 Pa. 425, 192 A.2d 682 (1963).

Indeed, later in its brief, U.S.F.&G. acknowledges the foregoing principle, stating that if the negli-

gence of the Codes Enforcement Officer had resulted in an injury which the building regulations were designed to avoid, "then there would have been coverage under the policy for a suit against the township." Thus, it appears that what U.S.F.&G. really asserts to deny coverage is that the resulting injuring was not "property damage" within the meaning of the policy.

We have been referred to no case just like the one before us but familiar principles and analagous dispositions are at hand. We start with the proposition that if language in an insurance policy is uncertain it is to be construed liberally in favor of the insured: Hionis v. Northern Mutual Ins. Co., 230 Pa. Super. 511, 327 A.2d 363 (1974). There is, in fact, nothing to suggest that the coverage under this policy is restricted to some specific type of property damage sustained by a third party as U.S.F.&G. would have us find. The building regulations were enacted for the public safety and welfare, and requiring the builder to bring the townhouse complex into compliance before anyone suffered harm from the defective windows was both the township's duty and the likely result of discovery that a township employee had negligently caused the non-compliance. The mere incorporation of the defective windows into the structures under the circumstances was a damage to the property within the meaning of the policy. See Arcos Corp. v. American Mutual Liability Ins. Co., 350 F. Supp. 380 (E.D. Pa. 1972), aff'd. 3 Cir., 485 F.2d 678; Bowman Steel Corp. v. Lumbermen's Mutual Casualty Co., 364 F.2d 246, (3rd Cir. 1966); Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y., 281 F.2d 538 (3rd Cir. 1960).

It follows that the township is entitled to recover from U.S.F.&G. the amount it paid in settlement of the builder's claim, together with the costs and ex-

penses it incurred in defending the suit. Accordingly, we enter the following

## ORDER

And now, April 1, 1985, judgment is entered in favor of the Township in the sum of $22,787.15.