**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff**

v.

**William J. CORRY, Ian Lipschutz, Leon Savage, and Spectrum Arena Limited Partnership, Defendants.**

**Civil Action No. 03–2826.**

United States District Court, E.D. Pennsylvania.

July 8, 2004.

---

11. Some of these disputed issues are related to others and may not be reached.

Pamela A. Carlos, Bennett Bricklin & Saltzburg LLP, Philadelphia, PA, for Plaintiff.

Henry N. Portner, Law Offices of Henry Portner, Willow Grove, PA, Walter J. Timby, III, Margolis Edelstein, Philadelphia, PA, for Defendants.

## OPINION

POLLAK, District Judge.

In this action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201–2202, State Farm Fire & Casualty Company ("State Farm") seeks a declaratory judgment that it has no duty to defend and indemnify William J. Corry in the underlying lawsuit. Corry is a third-party defendant in a tort action pending in the Philadelphia County Court of Common Pleas, and holds a homeowners insurance policy issued by State Farm.

Presently before the court is State Farm's motion for summary judgment. For the reasons set forth below, the motion will be denied, and the declaratory judgment action will be dismissed so far as it relates to State Farm's duty to defend Corry in the state court proceeding. A decision by this court on the remainder of the complaint, as it relates to State Farm's duty to indemnify, will be stayed pending a final judgment in the Court of Common Pleas.

### Factual and Procedural Background

This declaratory judgment action has its origin in an altercation that took place during a Philadelphia Flyers hockey game at the First Union Center in Philadelphia on May 14, 2000. Ian Lipschutz and Leon Savage, who were attending the game, claim that they were assaulted inside the arena and in an adjacent parking lot, causing them serious physical injury. On September 13, 2002, Lipschutz and Savage filed a tort action in the Court of Common Pleas for Philadelphia County against the owner and operator of the First Union Center, Spectrum Arena Limited Partner-

ship ("SALP").[1] The state court complaint alleges that SALP and its employees were negligent and/or reckless in failing to provide supervision and security adequate to prevent injury to Lipschutz and Savage.

After filing an answer denying all liability, SALP filed a joinder complaint against William J. Corry for indemnification and/or contribution. SALP alleges that it was Corry who assaulted Lipschutz and Savage, and contends that any injury suffered by Lipschutz and Savage was due to Corry's "negligence, carelessness, recklessness and intentional conduct."

Corry held a homeowners insurance policy issued by State Farm. Upon learning that SALP had filed a joinder complaint against him, Corry filed a claim with State Farm, asserting that the insurer was obligated to defend and indemnify him. By letter dated April 2, 2003, State Farm informed Corry that it would provide him with a defense, but that it reserved its right to deny defense or indemnity should it be determined either that Corry had acted in violation of the policy or that the injuries claimed fell beyond the scope of the policy.

On May 1, 2003, State Farm filed the instant declaratory judgment action in this court, seeking a determination regarding its obligation to defend and indemnify Corry. The underlying suit in the Court of Common Pleas was subsequently stayed pending this action's resolution. State Farm filed a motion for summary judgment on September 23, 2003. There has been no response from any of the defendants in the declaratory judgment action to either the complaint or the motion for summary judgment.[2]

Although none of the parties initially contested this court's jurisdiction, in a March 29, 2004, memorandum and order I observed that jurisdiction over a Declaratory Judgment Act case is discretionary, turning on considerations of practicality and judicial administration. Noting that common issues appeared to arise in both the state court proceeding and this federal declaratory judgment action, I ordered the parties to submit briefing regarding the question of whether this court should exercise its discretionary jurisdiction. Having reviewed the submissions of State Farm and Corry and given the matter further consideration, I am prepared to issue this opinion.

## Discussion

 This court has jurisdiction under 28 U.S.C. § 1332 based on the diversity of the parties and the amount in controversy, which exceeds $75,000.[3] Venue is proper

1. The state court complaint actually named as the defendant "Comcast Spectacor Arena Systems, Inc., individually and trading as Comcast Spectacor Arena Systems L.P." In a subsequent pleading, this defendant indicated that its proper designation was Spectrum Arena Limited Partnership.

2. State Farm has entered into a stipulation with two defendants to this declaratory judgment action, Lipschutz and Savage, providing that as neither defendant has an interest in the action's outcome, Lipschutz and Savage would not need to file a response to State Farm's complaint, and both would be bound by the action's outcome. The stipulation did not involve Corry or SALP.

3. The amount in controversy in a declaratory judgment action is measured by the value of the object of the litigation. See Hunt v. Wash. St. Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In a declaratory judgment action regarding an insurance contract, "the amount in controversy is determined by assessing the value of the underlying legal claims for which insurance coverage is sought." Coregis Ins. Co. v. Schuster, 127 F.Supp.2d 683, 686 (E.D.Pa. 2001). In its complaint, State Farm assesses the value of the underlying legal claims as only "an amount in excess of $50,000 plus interest and cost." Complaint ¶ 10. Looking only at the face of State Farm's complaint, it

under 28 U.S.C. § 1391(a) because the events giving rise to State Farm's request for declaratory judgment occurred in Philadelphia, which is within the Eastern District of Pennsylvania.

■ Even when subject matter jurisdiction is otherwise present, the court's exercise of its power to grant declaratory relief pursuant to the Declaratory Judgment Act ("Act") is discretionary. The Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction ... any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). "The Act only gives a court the *power* to make" such a declaration; "it does not *require* that the court exercise that power." *Step–Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 646–47 (3d Cir.1990); *see also Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (emphasizing that the district courts are under no compulsion to exercise their jurisdiction under the Act). A district court has greater discretion to decline jurisdiction under the Declaratory Judgment Act than under the traditional abstention doctrine of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), which permits abstention only under exceptional circumstances. *See Terra Nova Insurance Co. v. 900 Bar,* 887 F.2d 1213, 1223–24 (3d Cir. 1989). In the declaratory judgment context, the district court's exercise of jurisdiction "yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Supreme Court has instructed that when a case is brought pursuant to the act, the district court should consider declining jurisdiction when "parallel proceedings, presenting opportunity for ventilation of the same state law issues, [are] underway in state court." *Wilton,* 515 U.S. at 290, 115 S.Ct. 2137 (reaffirming discretionary standard articulated in *Brillhart*). In *Terra Nova,* the Third Circuit identified several additional factors for a district court to consider in deciding whether to exercise jurisdiction over a declaratory judgment action. These criteria include the following:

> (1) the likelihood that the declaration will resolve the uncertainty of obligation that gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies.

*Terra Nova* 887 F.2d at 1224 (quoting *Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 167 (3d Cir.1982)). The *Terra Nova* court also raised the additional concern that, in declaratory judgment actions arising in the insurance context, a race for

appears that the declaratory judgment action does not satisfy the jurisdictional minimum.

However, where it is not evident from the complaint whether the jurisdictional minimum has been met, the court may make an independent appraisal of the claims contained therein. *See Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir.1993). A review of the underlying state court complaint reveals that it includes two counts, one on behalf of Lip-schutz and one on behalf of Savage. Each count seeks "an amount in excess of Fifty Thousand ($50,000.00) Dollars" for "severe and disabling injuries" to that plaintiff's neck, back, and shoulders; medical bills; lost earnings; and emotional distress. Consequently, the total value of the underlying claims for which State Farm must potentially provide coverage is an amount in excess of $100,000, and the jurisdictional minimum has been met.

collateral estoppel might ensue if the "same factual question lies at the heart of both an insurance overage dispute and the underlying tort action." *Terra Nova*, 887 F.2d at 1224 (internal quotations omitted). With these principles in mind, I turn to State Farm's motion for summary judgment.

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the summary judgment stage, the court must view the evidence, and draw all reasonable inferences, in the light most favorable to the non-moving party. *See Dici v. Commonwealth*, 91 F.3d 542, 547 (3d Cir.1996).

### 1. The Duty to Defend

■ State Farm seeks a declaratory judgment that it has no duty to defend Corry against SALP's joinder complaint in the Court of Common Pleas. Under Pennsylvania law, "an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985) (citing, *inter alia*, *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484, 488 (1959)).[4] Moreover, "[t]he insurer is required to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *C. Raymond Davis & Sons, Inc. v.*

*Liberty Mut. Ins. Co.*, 467 F.Supp. 17, 19 (E.D.Pa.1979). Therefore, if even one claim appearing in the joinder complaint filed by SALP against Corry could potentially come within the coverage of Corry's insurance policy, State Farm has a duty to defend Corry in the state court proceeding. To determine whether this is so, I will first review the scope of the insurance coverage and then examine the allegations in SALP's joinder complaint to ascertain whether they trigger potential coverage.

■ The insurance policy provides that State Farm is to defend and, in the event of an adverse judgment, indemnify Corry in any suit brought against him seeking damages for bodily injury caused by an "occurrence." The policy defines "occurrence" as "an accident, including exposure to conditions, which results in (a) bodily injury; or (b) property damage" during the policy period. The policy also contains an exclusion stating that State Farm will not provide coverage for bodily injury or property damage that was "either expected or intended by the insured" or that was "the result of willful and malicious acts of the insured." State Farm maintains that the claims asserted against Corry fall outside the coverage of the insurance policy, because the injuries allegedly sustained by Lipschutz and Savage were not caused by "an accident," but were "expected or intended" by Corry and/or "the result of" Corry's "willful and malicious acts."

■ If SALP's joinder complaint is to be construed as only alleging intentional conduct on the part of Corry, the claims against Corry would indeed fall beyond the

---

4. Under Pennsylvania choice of law rules, in an insurance dispute based on diversity, the trial court applies the law of the state where the policy was delivered. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745–46 (3d Cir.1999). In the absence of proof of place of delivery, the court presumes that the policy was delivered at the insured's residence. *Roth v. Maryland Cas. Co.*, 209 F.2d 371, 373 (3d Cir.1954). When Corry's insurance coverage took effect on May 14, 2000, Corry's residence was located in Malvern, Pennsylvania. Therefore, Pennsylvania law applies.

scope of the policy's coverage. Intentional acts are not "accidents," and thus not "occurrences." *Gene & Harvey Builders v. Pennsylvania Mfrs.' Ass'n Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986). However, if the joinder complaint also alleges negligent acts by Corry, then Corry has potential coverage under the policy and State Farm is bound to defend Corry. This is so because, under Pennsylvania law, injuries caused by negligence are considered to be the result of "accidents" within the meaning of insurance policies, *Lancaster Area Refuse Auth. v. Transamerica Ins. Co.*, 437 Pa. 493, 263 A.2d 368, 369 (1970), and, correspondingly, negligence claims do not fall within policy exclusions for injuries "expected or intended" by the insured. *Britamco Underwriters, Inc. v. Emerald Abstract Co.*, 855 F.Supp. 793, 798 (E.D.Pa.1994); *see also United Servs. Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 985–92 (1986). Furthermore, although I have found no cases squarely on point, it seems to me highly probable that Pennsylvania courts would conclude that negligence claims do not fall within policy exclusions for "willful and malicious acts": this would seem to follow from the care with which, in somewhat analogous contexts, Pennsylvania courts distinguish negligent conduct from willful and malicious conduct. *See Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673, 675 n. 2 (1996). Therefore, the question of State Farm's obligation to defend Corry turns on whether SALP's joinder complaint includes a negligence claim.

The joinder complaint alleges the following:

> The occurrence and/or accident referred to in [Lipschutz and Savage's] Civil Action Complaint ... was due to the negligence, carelessness, recklessness and intentional conduct of Additional Defendant William Corry which conduct consisted of the following:

> a) failure to follow instructions of the security guards and other personnel of SALP and Comcast et. al. with regard to behavior and conduct at the Flyers game ...;

> b) intentionally assaulted and or struck [Lipschutz and Savage] ...;

> c) failure to control his own behavior, resulting in an altercation and/or assault and or battery by William Corry against [Lipschutz and Savage];

> d) failure to act in a reasonable manner within the SALP facility at the Flyers Hockey game;

> e) creating an unsafe situation by which [Lipschutz and Savage] allegedly were injured.

Motion for Summary Judgment, exh. C at ¶ 6. On the basis of the allegations its joinder complaint, it appears that SALP may recover on either a theory of intentional tort or a theory of negligence. Under Pennsylvania law, an act is intentional only if "the actor desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Elitzky*, 517 A.2d at 989. While the joinder complaint certainly makes out claims of intentional tort—most conspicuously, the allegation that Corry "intentionally assaulted and or struck" Lipschutz and Savage—it is also framed in terms of negligence. The joinder complaint charges Corry with "failure to follow instructions," "failure to act in a reasonable manner," and "creating an unsafe situation"—allegations that appear intended to give content to the more general initial charges of "negligence" and "carelessness." There is no suggestion with respect to these allegations that Corry intended to cause the harm that resulted, or knew that such harm was substantially certain to result. The allegations in SALP's joinder complaint thus sound in

both intentional tort and negligence. Therefore, State Farm has a duty to defend Corry in the state court proceeding at this time. The declaratory judgment complaint will be dismissed to the extent that it relates to a duty to defend.

### 2. The Duty to Indemnify

■ Unlike the duty to defend, which arises whenever the claims asserted by the injured party *potentially* come within the coverage of the policy, the duty to indemnify is triggered only when the insured is determined to be liable for damages within the policy's coverage. *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 107 F.Supp.2d 647, 650 (E.D.Pa.2000). This distinction is an important one. Whereas the duty to defend must typically be decided before the underlying case proceeds, there is no equivalent need to resolve the question of an insurer's duty to indemnify prior to the development of facts in the underlying case. In certain cases, it may in fact be preferable to permit the state court to evaluate the facts before the federal court rules on the issue of indemnification. *Nationwide Mut. Fire Co. v. Shank*, 951 F.Supp. 68, 71–72 (E.D.Pa.1997). This is one of those cases.

In order to issue a declaratory judgment stating that State Farm has no duty to indemnify, this court would have to determine that the injuries to Lipschutz and Savage fell outside the scope of Corry's insurance coverage—i.e., that the injuries were an accident, that they were "expected or intended" by Corry, or that Corry's conduct was "willful and malicious." To make such a determination at this stage would be problematic, for two reasons.

First, determinations as to the details of the altercation, Corry's involvement, and Corry's intent depend on a considerably greater factual exposition than appears before this court. Setting aside the brief allegations made in the parties' pleadings, the only evidence that has been presented to this court is a single, unauthenticated newspaper photograph attached as an exhibit to State Farm's motion for summary judgment, ostensibly showing the incident at the Flyers game that gave rise to the underlying tort action. Neither the photograph nor its caption even identifies any of the individuals pictured, let alone provides the court with sufficient evidence to make the factual determinations just described.

■ Second, because the Court of Common Pleas has not yet evaluated the facts, for this court to rule on factual issues that are also central to the state court proceeding "raises serious questions of collateral estoppel." *Shank*, 951 F.Supp. at 72.[5] To rule on the indemnification question would require resolution of the merits of the underlying dispute, unduly prejudicing one or more of the litigants in the state court proceeding. *See Pac. Indem. Co. v. Linn*, 766 F.2d 754, 766 (3d Cir.1985).

■ For these reasons, "[a]s a general rule, the declaratory judgment court should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action." *Home Ins. Co.*, 107 F.Supp. at 650. Accordingly, I will stay this action

---

5. Under Pennsylvania law, collateral estoppel applies if
 (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or

person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.
*City of Pittsburgh v. Zoning Bd. of Adjustment*, 522 Pa. 44, 559 A.2d 896, 901 (1989).

with respect to the question of indemnification, and permit the Court of Common Pleas to render a decision on the underlying facts of this dispute. Upon the resolution of the state proceeding, State Farm is directed to inform the court of the outcome, at which time I will entertain any motion or motions for summary judgment on the issue of indemnification.

### Conclusion

For the foregoing reasons, State Farm's complaint will be dismissed so far as it relates to its duty to defend, as I find that State Farm is under an obligation to defend Corry in the underlying state court action. State Farm's motion for summary judgment will be denied. Because it would be improvident to resolve the issue of indemnification while the state suit is pending, the remainder of State Farm's declaratory judgment action will be stayed until the conclusion of the state proceeding.

An appropriate order follows.

### ORDER

For the reasons set forth in the accompanying opinion, it is hereby ORDERED that:

(1) State Farm's Declaratory Judgment Complaint (Docket # 1) is DISMISSED so far as it relates to a duty to defend.

(2) State Farm's Motion for Summary Judgment (Docket # 9) is DENIED.

(3) State Farm is bound by its insurance policy to defend Corry in the underlying state court suit.

(4) The remainder of State Farm's Declaratory Judgment Complaint, as it relates to a duty to indemnify, is STAYED until such time as a final judgment is entered in the underlying state court suit.

(5) The clerk of this court is directed to place this case in the civil suspense docket pending the outcome of the underlying state court action.

(6) Upon the entrance of a final judgment in the underlying state court action, State Farm shall so inform the court, whereupon any motion or motions for summary judgment will be received and considered on the merits.